UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NIKITA WILLIAMS,

                              Plaintiff,

              -vs-                                    07-CV-698C

BOARD OF EDUCATION - CITY OF BUFFALO,
and
MICHAEL MOGAVERO, Individually and Officially
as Principal of Riverside Institute of Technology,

                              Defendants.
_____

APPEARANCES:   CHIACCHIA & FLEMING, LLP (LISA A. POCH, ESQ., OF
               COUNSEL), Hamburg, New York, Attorneys for Plaintiff.

               DAVID RODRIGUEZ, ACTING CORPORATION COUNSEL, CITY
               OF BUFFALO (DENISE M. MALICAN, ESQ., ASSISTANT
               CORPORATION COUNSEL, OF COUNSEL), Attorneys for
               Defendant Board of Education - City of Buffalo.

## INTRODUCTION

This case was originally filed in New York State Supreme Court, Erie County,

and was removed to this court on October 19, 2007 (Item 1).  Plaintiff alleges that the

defendants retaliated against her for the exercise of her rights guaranteed by the First

Amendment to the Constitution, in violation of 42 U.S.C. § 1983.  This matter is

currently before the court on the defendants' motions for summary judgment (Items 51,

72).

**BACKGROUND**

In her complaint, plaintiff alleged that since 1991, she was employed by the defendant Board of Education as a clerk at the Riverside Institute of Technology ("Riverside"), where defendant Mogavero was the building principal (Item1, ¶¶ 5-6). Plaintiff alleged that in approximately September 2005, she was instructed by defendant Mogavero to alter payroll documentation to reflect that certain substitute teachers were performing special education duties. *Id.,* ¶ 8.  Plaintiff objected to this practice because she believed that Mogavero was misappropriating federal special education funds. *Id.,* ¶¶9, 12, 13.  Plaintiff complained about this practice to her supervisor, her union, the Board of Education, the City of Buffalo, and to other employees at Riverside. *Id.,* ¶¶ 15, 16, 18.

Plaintiff alleged that in approximately October 2005, Mogavero began to treat her differently, including subjecting her to demeaning remarks, confrontational behavior, and numerous written warnings (Item 1, ¶ 21).  As a result of the hostile working environment, plaintiff left work on sick leave from March 10, 2006 until October 2, 2006. *Id.,* ¶¶ 22, 24.  When she returned to work, plaintiff was transferred to the Occupational Training Center. *Id.,* ¶ 25.  She did not have enough seniority to retain the position, however, and was forced to choose between returning to Riverside or bidding on another position.  Plaintiff chose to return to Riverside. *Id.,* ¶¶ 26, 27.

Plaintiff alleged that upon her return to Riverside, defendant Mogavero again subjected her to harassment, which included moving her desk out of the main office and forbidding her use of the fax machine, copier, or lavatory near the main office,

forbidding her from speaking to or e-mailing him, issuing unwarranted disciplinary warnings, and giving her the work assignments of two or three people (Item 1, ¶ 28). Plaintiff alleged that the defendants, while acting under color of state law, have retaliated against her for exercising her rights to free speech as guaranteed by the First Amendment to the United States Constitution. *Id.,* ¶¶ 31-32.

In lieu of an answer, on November 14, 2007, defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Item 8).  That motion was denied in a Memorandum and Opinion filed July 29, 2008 (Item 13).  The defendants filed their answer on August 25, 2008 (Item 14).  Thereafter, on December 17, 2008, the defendants filed a motion to amend/correct the answer (Item 18).  Plaintiff opposed the motion (Items 20, 21).  In an order filed March 27, 2009, the court granted the motion to amend (Item 25), and the amended answer was filed April 2, 2009 (Item 26).

The parties unsuccessfully attempted to mediate this dispute, then proceeded to discovery.  On June 13, 2011, defense counsel filed a motion for summary judgment on behalf of the Board of Education - City of Buffalo only, not the individual defendant Mogavero (Item 51).  On June 16, 2011, the parties filed a stipulation which provided that the City of Buffalo Corporation Counsel discovered "a possible or apparent conflict of interest in continuing representing both defendants Board of Education and Mogavero" and withdrew from representation of defendant Mogavero (Item 52, p. 1).

On September 9, 2011, attorney Robert Heary filed a notice of substitution of counsel on behalf of defendant Mogavero (Item 62).  Plaintiff filed her response to the City's motion for summary judgment on September 30, 2011 (Items 65, 66). Thereafter, on January 6, 2012, defendant Mogavero filed a motion for summary

3

judgment (Item 72).  Plaintiff filed a response to the motion on February 8, 2012 (Items

77-79), and defendant Mogavero filed a reply on March 9, 2012 (Item 81).  The court

has determined that oral argument is unnecessary.  For the reasons that follow, the

motions for summary judgment are granted and the complaint is dismissed.


## FACTS[1]

At all times relevant to the motions, plaintiff was employed by the Board of

Education of the City of Buffalo as a school clerk stenographer and was a member of

the Professional, Clerical, Technical Employees Association ("PCTEA").  Plaintiff

testified that she began working for the defendant in 1991 and became a clerk

stenographer at Riverside in 1993 (Item 51, Exh. B, p. 10).  Her duties included payroll,

bookkeeping, ordering and distribution of supplies, inventory, answering telephones,

correspondence, reports, and attendance.  *Id.*  Plaintiff's job description specifically

provided that plaintiff was responsible for "compil[ing], enter[ing] and maintain[ing] bi-

weekly payrolls of faculty and school staff" (Item 65, Exh. F).

Plaintiff testified that teachers performed clerical tasks in the office at Riverside,

a practice which she opposed (Item 51, Exh. C, p. 75-79, 81-82).  In September or

October 2005, plaintiff advised her supervisor and complained to her union president

that defendant Mogavero asked her to commit payroll fraud.  *Id.*, pp. 85-86.  Mr.

---

[1] The statement of facts has been compiled by reference to the documents submitted by the
parties in support of and in opposition to the motions, including plaintiff's testimony at a hearing pursuant
to New York General Municipal Law § 50-h (Item 51, Exh. B), plaintiff's deposition testimony (Item 51,
Exh. C), the deposition testimony of Michael Mogavero (Item 51, Exh. J), plaintiff's job description (Item
65, Exh. F), and affidavits from Barbara J. Smith, Patricia A. Pancoe, and Patricia Harrington (Item 51, Att.
8).

Mogavero instructed her to use special education funds to justify substitutes for regular teachers who were doing clerical work. *Id.*, p. 108.  Specifically, plaintiff testified that defendant Mogavero instructed her to "white out" absences on payroll documents for two teachers to make it appear that they were present in the classroom.  *Id.,* p. 106.  He then instructed her to mark two special education teachers absent.  *Id.*  Substitute teachers covered the classrooms for the two teachers who were assigned to work in the office.  *Id.,* p. 108.  Plaintiff stated that, as a parent of children with special needs, she was upset by defendant Mogavero's manipulation of the special education funds at Riverside.  *Id.,* p. 242.  Plaintiff felt Mogavero was "taking away money from the special ed kids."  *Id.,* p. 268.  Plaintiff complained about these practices to her supervisor and union.  She also met with the union attorney and provided him copies of payroll records. *Id.,* p. 65.

Plaintiff's complaints led to an investigation by the Board of Education.  Plaintiff testified that defendant Mogavero never reprimanded her until he learned that he was under investigation (Item 51, Exh. C, p. 235).  Following the investigation, Mogavero ordered the staff at Riverside not to assist plaintiff with her duties.  *Id.,* pp. 92-94. Plaintiff testified that in October 2005, she began to suffer harassment in the form of disciplinary write-ups, reprimands, and verbal attacks (Item 51, Exh. B, pp. 16 - 23). Other employees at Riverside told plaintiff that Mogavero instructed them not to associate with plaintiff.  *Id,* p. 23.  Plaintiff complained to her union and her supervisor about the harassment.  *Id.,* p. 41.  In 2006, plaintiff, who suffers from lupus, was advised by her physician to take a medical leave because the stress of the workplace

5

was exacerbating her lupus.  *Id.,* p. 35.

When plaintiff returned from her medical leave, she first was assigned to the Occupational Training Center (Item 51, Exh. C, p.180).  In August 2006, she returned to Riverside, where defendant Mogavero instructed her to work out of the attendance office and forbade her to enter the main office or speak to him. *Id.,* p. 248.  Plaintiff was asked to voluntarily transfer to Seneca Vocational, but she refused.  *Id.,* pp. 182-83. Eventually, she was  transferred to the Western New York Day Treatment Center in October 2006.  *Id.,* pp. 185-86.

In support of the motion, defendant Mogavero stated that he became aware that plaintiff had complained about the manner in which she was completing the payroll which resulted in an investigation of the payroll practices at Riverside (Item 51, Exh. J, pp. 22-23).  He admitted that he never had occasion to discipline plaintiff in writing until after she complained about his payroll practices.  *Id.,* p. 37.  When he learned in October 2005 that plaintiff had accused him of payroll fraud, he was concerned that those accusations could lead to his being denied tenure.  *Id.,* p. 46.  He told plaintiff on more than one occasion that if she was unhappy at Riverside, she could transfer to another school.  *Id.,* p. 50.

Defendant Mogavero admitted that he issued written disciplinary memoranda to plaintiff in January 2006 regarding her failure to provide him with payroll documents in a timely fashion and for her conduct on the telephone with a parent (Item 51, Exh J, pp. 51, 58).  On February 23, 2006, he issued a disciplinary memo to plaintiff regarding her failure to timely complete an absence list.  *Id.,* p. 76.   He also issued a disciplinary

6

memo to plaintiff on February 27, 2006 for her failure to comply with a reasonable request. *Id.,* p. 81.  He stated that plaintiff refused to communicate with him without a union representative, so he had no verbal communication with her after the fall of 2005. *Id.,* p. 62.  Mr. Mogavero stated that it was the practice of the previous administration at Riverside to use teaching staff for clerical work.  *Id.,* p. 61.  He also stated that he had the permission of the District Director of Special Education to use a special fund to allow substitute teachers to supervise students in the auditorium.  *Id.,* pp. 108-09.

Mr. Mogavero admitted that when plaintiff returned to Riverside in August 2007, he instructed her not to enter the main office without permission and forbade her from using the main office restroom (Item 51, Exh. J., pp. 115-16 ).  He was later instructed to move her desk back into the main office.  *Id.,* p. 117.

In further support of the motion, Barbara J. Smith, Chief Financial Officer for the Board of Education of the Buffalo City School District, stated that paying a substitute teacher from a special education budget line is "inconvenient" and not viewed favorably, but is neither illegal, unlawful, nor unethical (Item 51, Att. 8).  Patricia A. Pancoe, the Executive Director for Labor Relations for the Buffalo Board of Education, stated that she investigated a grievance from the PCTEA on behalf of the plaintiff.  The union complained that plaintiff was the recipient of numerous disciplinary memos due to plaintiff's refusal to change payroll documents to reflect that certain substitute teachers were filling in for special education teachers who were not absent.  Ms. Pancoe reviewed the relevant payroll records from Riverside.  She spoke with defendant Mogavero, advised him that the practice of using a special education budget line for substitute teachers was not within the policy and custom of the Board, and directed that

7

he discontinue the practice.  Ms. Pancoe stated that Mr. Mogavero's use of substitute teachers was neither illegal nor unethical. *Id.*  Finally, Patricia Harrington, Supervising School Clerk, stated that in September 2005, she was contacted by plaintiff who complained that she was instructed by Mr. Mogavero to handle student attendance and she was unaware of how to complete the task.  Ms. Harrington spent three days at Riverside in the fall of 2005 training plaintiff in the use of current office technology so as to allow her to process student attendance.  *Id.*

## DISCUSSION

### 1.  Summary Judgment Standard

The standard for granting summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."  *Gallo*, 22 F.3d at 1224.  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *see also Gallo*, 22 F.3d at 1223.

8

Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible...."  *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 532 (2d Cir. 1993); *see also Scotto v. Almenas*, 143 F.3d 105, 114–15 (2d Cir. 1998).

**2.  Plaintiff's First Amendment Claim**

Defendant contends that plaintiff has failed to set forth a claim for retaliation based on the exercise of her First Amendment rights.  "To survive summary judgment on a section 1983 First Amendment retaliation claim a plaintiff must demonstrate that he engaged in protected speech, and that the speech was a substantial or motivating factor in an adverse decision taken by the defendant."  *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 152 (2d Cir. 2006).  "Whether speech by a public employee is protected from retaliation under the First Amendment begins with this question: 'whether the employee spoke as a citizen on a matter of public concern.'"  *Huth v. Haslun*, 598 F.3d 70, 73 (2d Cir. 2010) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos,* 547 U.S. at 421; *see also Weintraub v. Bd. of Educ.*, 593 F.3d 196, 201 (2d

9

Cir.), *cert. denied,* 131 S.Ct. 444 (2010).  Stated another way, if plaintiff was not speaking as a citizen, "she has no First Amendment cause of action based on [her] employer's reaction to the speech."  *Sousa v. Roque*, 578 F.3d 164, 170 (2d Cir. 2009) (internal citations and quotations omitted).  Accordingly, the court must conduct an objective, practical inquiry to determine whether plaintiff's speech was made "pursuant to" her job duties.  *See Weintraub*, 593 F.3d at 202; *see also Garcetti*, 547 U.S. at 421.

In this case, the alleged protected speech was plaintiff's reporting to her supervisor, her union, the union attorney, and representatives of the Board of Education her belief that defendant Mogavero was committing payroll fraud with regard to the use of special education funds.  She objected to the use of teachers performing clerical duties and to the use of substitute teachers from special education funding lines to cover the absences of regular teachers.  Mogavero disputes that he forced plaintiff to do anything improper in the processing of payroll documents and he has produced affidavits that support his claim that he did nothing illegal, improper, or fraudulent.  Nonetheless, the court acknowledges plaintiff's position, that she believed what was being asked of her was improper.  However, even accepting plaintiff's version, her speech was not protected for purposes of the First Amendment.

While the actual misuse of special education funds could be considered an issue of public concern as opposed to a redress of personal grievances, the focus of the inquiry here is not the content of the speech but the role of the speaker.  *See Weintraub,* 593 F.3d at 204.  The Supreme Court in *Garcetti* defined speech made "pursuant to" a public employee's job duties as "speech that owes its existence to a

public employee's professional responsibilities." 547 U.S. at 421.  The *Garcetti* Court

"further cautioned courts against construing a government employee's official duties too

narrowly." *Weintraub,* 593 F.3d at 202.  Significantly, "the listing of a given task in an

employee's written job description is neither necessary nor sufficient to demonstrate

that conducting the task is within the scope of the employee's professional duties for

First Amendment purposes." *Garcetti,* 547 U.S. at 425.  In light of *Garcetti*, the Second

Circuit has joined other circuit courts in concluding that "under the First Amendment,

speech can be 'pursuant to' a public employee's official job duties even though it is not

required by, or included in, the employee's job description, or in response to a request

by the employer." *Weintraub,* 593 F.3d at 203.

   In *Weintraub,* a public school teacher's filing of a grievance regarding the school

administration's failure to discipline a disruptive student was found to have been speech

pursuant to his official duties and unprotected by the First Amendment.  The Second

Circuit found that the plaintiff's grievance was "'part-and-parcel of his concerns' about

his ability to 'properly execute his duties. . .'" *Weintraub,* 593 F.3d at 203 (quoting

*Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007).  Similarly, in

*Herdman v. Hogan*, 2011 WL 4566333 (N.D.N.Y. Sept. 29, 2011), the court found

plaintiff's speech to be unprotected by the First Amendment where the public employee

uncovered alleged embezzlement and reported it to her supervisor in the course of her

employment.

   Plaintiff notes that her job description:

did not task her with the duty of (1) ensuring, investigating and determining that said payroll documents remained free of fraud; (2) reviewing payroll records to determine if funds were being fraudulently misapportioned; (3) working as a forensic accountant to discover the fraudulent conduct of others; and/or (4) with the duty of reporting payroll fraud and fraudulent misapportionment of monies to Defendant Board for investigation.

Item 65, ¶ 8. Thus, she argues that her speech did not occur within the scope of her official duties. However, the court will not construe plaintiff's job description so narrowly. Plaintiff was responsible for processing and maintaining the payroll documents at Riverside. She objected to certain payroll reporting practices at the school and made her concerns known through internal channels available to her as an employee of the Buffalo Board of Education. The court finds that plaintiff's complaints to her union, her supervisor, and to representatives of the Board of Education which resulted in an investigation of the payroll practices of defendant Mogavero, were made pursuant to her official duties as a school clerk. Plaintiff's speech was "part-and-parcel of [her] concerns about [her] ability to properly execute [her] duties." *Weintraub v. Bd. of Educ.*, 593 F.3d at 203. Additionally, as in both *Weintraub* and *Herdman,* plaintiff did not speak publicly as a citizen, for example to a news outlet or by way of a letter to the editor, regarding her concerns of impropriety. Her speech had no relevant citizen analogue and "owe[d] its existence to [her] professional responsibilities." *Garcetti,* 547 U.S. at 421. Accordingly, plaintiff's speech was not protected by the First Amendment and her retaliation claim must be dismissed.[2]

---

[2] As the court has determined that plaintiff's single cause of action must be dismissed, it is unnecessary to address the defendants' contentions that plaintiff has failed to establish an adverse employment action, that defendants set forth legitimate, non-retaliatory reasons for their actions, and that

**CONCLUSION**

Based on the foregoing, the defendants' motions for summary judgment (Items

51, 72) are granted and the complaint is dismissed.

So ordered.


_____/s/ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated: March    15    , 2012
p:\pending\2007\07-698.mar1212

---

plaintiff failed to establish sufficient grounds for municipal liability.